MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

ADAM A. REEVES (NYBN 2363877)
Assistant United States Attorney

   450 Golden Gate Avenue, 11th Floor
   San Francisco, California 94102
   Telephone: (415) 436-7157
   Facsimile: (415) 436-7234
   E-mail: Adam.Reeves@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | No. CR 10-0860 (WHA) |
|---|---|---|
| Plaintiff, | ) | UNITED STATES |
| | ) | SENTENCING MEMORANDUM |
| v. | ) | |
| | ) | Date: November 8, 2011 |
| ANNABEL McCLELLAN, | ) | Time: 2:00 p.m. |
| | ) | Court: Hon. William H. Alsup |
| Defendant. | ) | |

## INTRODUCTION

The United States respectfully submits this Sentencing Memorandum pursuant to Federal Rule of Criminal Procedure 32 and Criminal Local Rule 32-5.

On April 5, 2011, the defendant, Annabel McClellan, pled guilty to the only count of the Indictment charging her with obstruction in violation of 18 U.S.C. § 1505. The defendant entered the plea of guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) and the terms of a written plea agreement executed by the parties.

At the November 8, 2011 hearing, the Court, having already received the October 25, 2011 Presentence Report ("PSR"), may accept or reject the plea agreement in

UNITED STATES SENTENCING MEMORANDUM,
*United States v. McClellan*, Case No. CR 10-0860 (WHA)

accordance with Fed. R. Crim. P. 11(c)(3)(A). If it rejects the plea agreement, the Court should so inform the parties, allow the defendant an opportunity to withdraw her plea and otherwise comply with Fed. R. Crim. P. 11(c)(5). If it accepts the plea agreement, the Court should include in the judgment the disposition agreed upon by the parties in the plea agreement and otherwise comply with Fed. R. Crim. P. 11(c)(4). Applying the relevant Sentencing Guidelines to this case, the United States agrees with the Department of Probation that defendant's total offense level is 12, that her criminal history category is I, and that her Guidelines range is 10-16 months imprisonment. PSR at 6 and 13.

For the reasons set forth below, the United States respectfully requests that the Court accept the plea agreement and sentence Annabel McClellan to fourteen (14) months *in prison*; a three year term of supervised release; and a special assessment of $100. Pursuant to the terms of the plea agreement, the sentence of imprisonment must be served "in prison" and therefore may not include community confinement or home detention pursuant to U.S.S.G. § 5C1.1. April 5, 2011 Plea Agreement at ¶ 8(a) ("the sentence to which the parties have agreed ... is as follows (a) a sentence of imprisonment of at least ten (10) months *in prison* and not more than sixteen (16) months *in prison*)(emphasis added). Because the defendant has been ordered to pay a $1 million penalty in the parallel civil enforcement action, *Securities and Exchange Commission v. Annabel McClellan*, Case No. 10-CV-05412 WHA, the United States does not seek any fine in this case. Because the "victims" or persons directly and proximately harmed by the defendant's criminal conduct cannot be readily identified, the United States does not seek restitution in this case. 18 U.S.C. § 3663.

**SUMMARY OF THE OFFENSE CONDUCT**

The defendant, Annabel McClellan, participated in an insider trading scheme with her sister, Miranda Sanders, and brother-in-law, James Sanders, who both lived in London, United Kingdom. James Sanders was involved in a trading business in London.

UNITED STATES SENTENCING MEMORANDUM,
*United States v. McClellan*, Case No. CR 10-0860 (WHA)

-2-

Annabel McClellan provided James Sanders with the names of target companies involved in the corporate transactions on which her husband, Arnold McClellan, was working. James Sanders used the confidential information to make so-called "spread bets" in the London markets relating to the performance of the United States securities involved in Arnold McClellan's corporate transactions.

Arnold McClellan, who resided with the defendant in San Francisco, possessed material, non-public information about corporate transactions involving publicly-traded companies by virtue of his work advising private equity firms and other clients of his business. At home, Annabel McClellan overheard her husband discuss confidential details of the corporate transactions on which he was working. In this manner, she was able to get confidential information about publicly-traded companies in the United States that was valuable because it was material to the price of the securities involved and non-public because the information was not yet known to the investing public.

Beginning in or around January 2007, knowing that it was illegal and wrong to do so, Annabel McClellan began to convey confidential information to James Sanders about deals on which her husband was working. She did so with the intent that James Sanders would trade securities on the basis of the material, non-public information that she gave him. Among other confidential information, the defendant told James Sanders the names of public companies that her husband's clients were negotiating to acquire and details about whether or not she thought specific deals were going forward. Often, she conveyed whether or not a deal was going forward by initially identifying the name of the acquisition target and later telling James Sanders and Miranda Sanders whether or not her husband was "still busy" on the deal.

Kronos (KRON) and Getty Images (GYN) were two of the public companies about which Annabel McClellan provided material, non-public information to James and

UNITED STATES SENTENCING MEMORANDUM,
*United States v. McClellan*, Case No. CR 10-0860 (WHA)

Miranda Sanders. James Sanders made approximately £552,967 (UK pounds) on Kronos and approximately £396,851 (UK pounds) on Getty Images.

Beginning in or about October 2009, Annabel McClellan obstructed an investigation by the United States Securities and Exchange Commission (SEC) into the insider trading scheme involving the defendant, Miranda and James Sanders. In particular, Annabel McClellan lied under oath to the SEC by (1) falsely denying that she did not get any confidential information from her husband, Arnold McClellan; (2) falsely denying that she learned about the companies her husband's clients wanted to acquire before the acquisitions were publicly announced; (3) falsely denying that she ever talked to James Sanders about Kronos; and (4) falsely denying that she had ever talked to James Sanders about Getty Images.

The United States estimates that the defendant's wrongdoing defrauded investors in the United Kingdom of approximately £1.54 million or about $3.05 million.

## GUIDELINES CALCULATION

The United States agrees with the Department of Probation's calculation of the Guidelines as:

    a.    Base Offense Level, U.S.S.G. § 2J1.2:    14

    b.    Acceptance of Responsibility, U.S.S.G. § 3E1.1(a):    -2

    c.    Adjusted offense level    12

PSR 5-6. The defendant's criminal history category is I, resulting in a Guidelines range of 10 to 16 months imprisonment. PSR at 13.

## CONTESTED SENTENCING ISSUES

If the Court accepts the plea agreement, the United States anticipates no contested issues relating to the defendant's sentencing beyond argument about what sentence within the limits agreed to by the parties is appropriate in this case. Crim. L. R. 32-5(b).

UNITED STATES SENTENCING MEMORANDUM,
*United States v. McClellan*, Case No. CR 10-0860 (WHA)

**SENTENCING RECOMMENDATION**

A.   18 U.S.C. § 3553(a) Factors

By her own admission, Annabel McClellan betrayed her husband for years in a duplicitous and destructive manner; she stole highly confidential, material, non-public information; she tipped her sister and brother-in-law in order to illegally benefit her family; and she lied repeatedly about it under oath to the SEC. This was not a one-time lapse of judgment. The defendant undertook a carefully planned and executed criminal scheme that required a superb, internationally-coordinated investigation by the SEC and the Financial Services Authority (FSA) in London to detect.

By any measure, the nature and circumstances of this offense are so serious that only a sentence of incarceration can act as a meaningfully deterrent. As a general matter, courts have recognized that "*white collar crime . . . requires heavy sentences to deter because it is potentially very lucrative.*" *United States v. Hauptman*, 111 F.3d 48, 52 (7th Cir. 1997) (emphasis added). "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation omitted). "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Id.* at 1240.

B.   Other Relevant Factors

Countervailing considerations weigh against seeking a prison sentence of greater than 14 months, however. First, the defendant is a mother of two young children. The duration of any prison sentence should balance their needs with the need for deterrence and punishment.

Second, the defendant, once charged, decided to cooperate with the government's investigation in a timely manner. Among other things, Annabel McClellan voluntarily

UNITED STATES SENTENCING MEMORANDUM,
*United States v. McClellan*, Case No. CR 10-0860 (WHA)

1 agreed to a limited waiver of the marital privilege. With that waiver in place, Annabel McClellan and her counsel met with a total of eight (8) representatives of the government (two FSA investigators; three SEC attorneys; two federal prosecutors; and one FBI Special Agent) and answered every question put to her over the course of a three-day interview. Given the need to understand the relationship between Annabel McClellan and her husband, some of the questions were personal in nature and difficult for the defendant to address. To her credit, she did. And in so doing, Annabel McClellan, by her cooperation, allowed the government to directly investigate the marital dimension of this case in a manner that would otherwise have been foreclosed.

Based on these other factors, the United States reduced its sentencing recommendation by two months from the maximum sentence of sixteen (16) month in prison agreed to as permissible by the parties.

## CONCLUSION

Taking into account all of the factors cited in Section 3553(a), the United States recommends that the Court impose a sentence of 14 months in prison and a three-year term of supervised release. This sentence appropriately reflects the severity of the defendant's criminal conduct as well as the need for both general and specific deterrence. The government submits that a lower sentence would not adequately reflect the seriousness of the defendant's crime or promote respect for the law.

DATED: October 28, 2011         Respectfully submitted,

                                MELINDA HAAG
                                United States Attorney

                                /s/
                                _____

                                ADAM A. REEVES
                                Assistant United States Attorney

UNITED STATES SENTENCING MEMORANDUM,
*United States v. McClellan*, Case No. CR 10-0860 (WHA)