

NANCI L. CLARENCE, SBN 122286
NICOLE HOWELL NEUBERT, SBN 246078
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
Email: nclarence@clarencedyer.com
Email: nneubert@clarencedyer.com

Attorneys for Defendant
ANNABEL MCCLELLAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>ANNABEL MCCLELLAN,<br><br>        Defendant. | Case No. CR 10-0860 WHA<br><br>**DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM**<br><br>**Sentencing Date: November 8, 2011** |

## I.      INTRODUCTION

Defendant Annabel McClellan stands before the Court for sentencing after pleading guilty to obstruction, a violation of 18 U.S.C. § 1505. Ms. McClellan's guilty plea arises from false statements she made under oath in October 2009 during an insider trading investigation conducted by the United States Securities and Exchange Commission. During that testimony, Ms. McClellan denied that she had knowledge of any confidential information regarding her husband's work as head of a mergers and acquisition group at an accounting firm and denied that she had given any of that information to James or Miranda Sanders, her brother-in-law and sister. In fact, from January 2007 until sometime in May 2008, Ms. McClellan had given James and

Miranda Sanders the names of companies potentially being acquired by clients of her husband's firm, prior to the acquisitions being publicly announced. Ms. McClellan gathered this information unbeknownst to her husband by overhearing his business calls and by seeing papers in his home office. She had agreed to provide the confidential information to James Sanders for the sole purpose of raising money to provide much-needed financial assistance to her father, who was facing criminal charges in the United Kingdom. Ms. McClellan never intended to, nor did, receive any of the proceeds of the trading activity. Nonetheless, Ms. McClellan admits that she lied under oath to SEC investigators when she was asked about her involvement in conveying to the Sanderses confidential information. While Ms. McClellan did so for a variety of complex family and personal reasons – reasons that are inextricably linked to her impulse to provide information to the Sanderses to begin with – she demonstrably accepts full and sole responsibility for her actions.

Ms. McClellan personally has apologized, face-to-face, to the investigators whose work she obstructed, and to her husband whom she betrayed and whose reputation and career has been marred by her conduct. In addition, she fully debriefed her involvement over three days of intense questioning by members of the FBI, United States Attorney's Office, SEC, and Financial Services Authority of the United Kingdom ("FSA"). Subsequently, Ms. McClellan agreed – which settlement this Court accepted – to pay a $1 million fine to the SEC, though she personally received no profits. Throughout this process, Ms. McClellan meaningfully has taken stock of her life and actively is addressing what led her to this point. Ms. McClellan stands ready to accept the Court's judgment and serve her sentence.

DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM          - 2 -
CASE NO.: CR-11-0860 WHA

On April 5, 2011, the Government and Ms. McClellan entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) whereby Ms. McClellan pleaded guilty to one count of obstruction in exchange for the Government's recommendation of a final offense level of twelve (12) under the U.S. Sentencing Guidelines. This recommendation includes a two-point downward adjustment for Ms. McClellan's acceptance of responsibility under U.S.S.G §3E 1.1(a). The resulting guideline range is 10 to 16 months. Under the plain terms of the agreement, Ms. McClellan has agreed not to argue for a sentence of less than 10 month in prison. The Government has recommended a sentence of 14 months in prison.

The Presentence Report recommends the low end of the guideline range of 10 months, taking into account the seriousness of Ms. McClellan's offense, while recognizing the mitigating facts of Ms. McClellan's history of good works, including charitable and volunteer work, and her independent motivation to pursue mental health treatment to address the motivations for her conduct. Thus, as just punishment for her offense, Ms. McClellan urges the Court to follow the recommendation of the Probation Officer in imposing a sentence of 10 months imprisonment.

## II.  THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a) MILITATE IN FAVOR OF A TEN MONTH SENTENCE

a.  Sentencing Factors under 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), the Court must consider several factors in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth therein. As the Supreme Court held in *United States v. Booker* (2005) 543 U.S. 220, and clarified and reiterated in its decisions in *Gall v. United States* (2007) 552 U.S. 38, and *Kimbrough v. United States* (2007) 552 U.S. 85, the Sentencing Guidelines are advisory and, thus, are just one of a number of factors to be considered under § 3553(a).

Under the statute, an appropriate sentence must: (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a).  Additionally, in determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the kinds of sentences available"; (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (4) "the need to provide restitution to any victims of the offense." *See id.*

Therefore, a sentencing court must consider all of the § 3553(a) factors, not just the Guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.  Not only may the district court not presume that the Guidelines range is reasonable, but neither should the Guidelines factor be given more or less weight than any other. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted) (holding that "while the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.")

      b.  <u>The Nature and Circumstances of the Offense</u>

**The SEC Testimony**

In October 2009, when Ms. McClellan was subpoenaed to testify regarding her involvement in providing confidential information to James and Miranda Sanders, she did not

tell the truth.  She lied about her knowledge of and involvement in providing to James and Miranda Sanders confidential information, which conduct had ended – of Ms. McClellan's own volition and well before she became aware of the SEC investigation – over 16 months prior. Admittedly, Ms. McClellan's reasons for giving false testimony included her desire to avoid punishment for her wrongdoing.  However, simultaneously, many other dynamics involving her family, her marriage, and her husband's career, were also in play.

In an ill-advised and near-sighted decision, Ms. McClellan thought that by denying her involvement to the SEC she could: (1) protect her sister and brother-in-law by not contradicting the statements they had already given to UK authorities several months earlier, (2) avoid further damage to her husband's career by trying to move past the SEC inquiry, thus facilitating her husband's return to work, which had been suspended pending the outcome of the SEC's investigation that became known to the McClellans and Mr. McClellan's employer in late May 2009, and (3) avoid further harm to her marriage and the pain and anguish of admitting her profound betrayal to her husband.  Ms. McClellan's was – by her own doing – faced with a terrible choice when subpoenaed by the SEC to testify.  Her decision was not, as the government contends, part of a "carefully planned criminal scheme."  Rather, under the pressures of the situation, in which she was jointly represented with her husband, she made the wrong decision, and one for which she is deeply remorseful.  Ms. McClellan now faces the reality that in trying to avoid the consequences of her actions, she is suffering all the things she hoped to avoid – the destruction of her relationship with her sister and of her husband's career – and more, as she will now be separated from her children for a lengthy period of incarceration.

DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM          - 5 -
CASE NO.: CR-11-0860 WHA



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM        - 6 -
CASE NO.:  CR-11-0860 WHA



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM      - 7 -
CASE NO.:  CR-11-0860 WHA



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   //

26   //

27

28   DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM   - 9 -
     CASE NO.:  CR-11-0860 WHA

**Ms. McClellan's Cooperation**

Over three grueling days of focused questioning by three law enforcement agencies, Ms. McClellan fully debriefed her involvement in providing confidential information to James and Miranda Sanders. In so doing, she painfully, but willingly, disclosed intense personal details about her life, her marriage, and her family. So committed was she to finally and fully making the Government, the SEC, and the FSA understand what had happened and her part in it, that she agreed to waive her marital communications privilege regarding these events. Ms. McClellan's cooperation with authorities was earnest and robust, and involved bearing the most intimate details of her life to skeptical prosecutors and regulators. By truthfully and completely answering each and every question posed to her over her three-day proffer, Ms. McClellan has provided significant assistance to the Government and regulators. Additionally, Ms. McClellan is restricted from communicating in any fashion with her sister, Miranda – which limitation she dutifully obeys.

      c.   The History and Characteristics of the Defendant

Aside from this offense and the circumstances surrounding it, Ms. McClellan has led a good life. Despite her chaotic upbringing, Ms. McClellan was a good student, "excelled at school and always received glowing reports from her teachers," finished the English equivalent of college earning a degree in law, and went on to work as a tax professional in London, where she met her husband.[1] Ms. McClellan gave up her promising career "to devote her life to her

---

[1] Letter from Diane Hirst ("Hirst Letter"), Exhibit 6. All letters previously have been submitted to the Court in conjunction with the Presentence Report.

DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM    - 10 -
CASE NO.:  CR-11-0860 WHA

husband and children so that she could be the greatest support to them possible,"[2] and "to be the kind of mother she felt she needed to be."[3] And to that end, she has been extremely successful. Ms. McClellan is "a terrific mother and has been tremendously involved"[4] in the lives of her children, whom "she walks to school"[5] each day. She "takes an active role in their education" and in dealing with "difficult social situations at school,"[6] ensures that they are raised in a "loving environment at home,"[7] and that they "grow into fine young men."[8] "To be with the McClellans [is] to be in a happy home."[9] "Annabel has instilled good moral values in her sons,"[10] including the way she has dealt with the instant offense:

> Annabel's sons are a real credit to her; polite, strong-minded and with a strong moral code. Throughout this episode, Annabel has discussed her wrong-doing with her sons and they are proud of her for admitting to her wrong-doing and standing up to the consequences of her actions.[11]

The "character [she] has exhibited during this difficult period exemplifies the priority [she] places on their children and family."[12] Ms. McClellan is the "pivotal person in her family,"[13] described as the "backbone of her family unit"[14] and "bedrock of her boys' lives,"

---

[2] Hirst Letter.

[3] Letter from Suraya Marshall ("Marshall Letter"), Exhibit 2.

[4] Letter from Lauren Barton, Exhibit 11.

[5] Letter from Lois Wooten ("Wooten Letter"), Exhibit 21.

[6] Letter from Jared Fortunato, Exhibit 9.

[7] Letter from Patricia Downs ("Downs Letter"), Exhibit 7.

[8] Letter from Rick Rankin, Exhibit 12.

[9] Wooten Letter.

[10] Letter from Sarah Morse ("Morse Letter"), Exhibit 8.

[11] Letter from Tamara Bond ("Bond Letter"), Exhibit 10.

[12] Letter from Renu Agrawal, Exhibit 20.

[13] Bond Letter.

[14] Letter from Caroline Yip ("Yip Letter"), Exhibit 15.

and on whom her "family depends greatly" for her "love and presence."[15]

As such, Ms. McClellan's absence from her boys, who are 8 and 13 years old, will have a profound impact on them.[16] Ms. McClellan has been the primary caregiver for her children since their birth and is the main source of stability and cohesion in their lives. Ms. McClellan has no other family support here other than her husband, whose relationship with the children is described in detail in Dr. Jinich's report. Ms. McClellan is intensely concerned about the affect her absence will have on her children and is deeply regretful to be putting her children through an experience similar to that which she and her siblings suffered.

In terms of her character, Ms. McClellan is not only immensely involved in her children's lives, but she has applied herself "tirelessly to support the community in which she lives,"[17] and, "has used her talents to help others."[18] These efforts include her work as "chair of the Town School Clothes Closet, a secondhand store run by committee, for two years" and "on behalf of Edgewood Center for Children and Families" taking a leadership role as the "Underwriting Chair for the annual fundraising event."[19]

---

[15] Letter from Holland Bender ("Bender Letter"), Exhibit 23.

[16] The developmental impact of a mother's arrest and incarceration is often more disruptive than that of a father's. Children are found to have experienced emotional problems, nightmares, fighting in school and a decline in academic performance as a result of being separated due to their mother's incarceration." Barbara Bloom, Imprisoned Mothers," in *Children of Incarcerated Parents*, edited by Katherine Gabel and Denise Johnston, M.D., Lexington Books, New York, 1995, p. 21; Susan M. Hunter, "Forward," in Gabel and Johnston, p. ix; U.S. GAO, Women in Prison, Washington, D.C., December 1999, p. 32.

[17] Letter from Susan Heske ("Heske Letter"), Exhibit 22.

[18] Letter from Marian Heath ("M. Heath Letter"), Exhibit 3.

[19] M. Heath Letter; Letter from Kelly Wylie, Exhibit 4; Downs Letter; Letter from Robert Heath ("R. Heath Letter"), Exhibit 13; Letter from Mary Ann McClellan ("McClellan Letter"), Exhibit 14; Letter from DeAnne Gustavson ("Gustavson Letter"), Exhibit 19; Heske Letter.

DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM      - 12 -
CASE NO.:  CR-11-0860 WHA

Consistently throughout the two dozen letters of support submitted to the Court on her behalf, Ms. McClellan is described as someone with a "good heart"[20] who is "warm and outgoing,"[21] "much loved and highly regarded by those who know her,"[22] and as "selfless, helpful, and kind,"[23] "gracious, poised, and humble."[24] She is "trusted implicitly" and given the responsibility of being godmother, power of attorney, and emergency contact for her friends and their children.[25] She is known for her "integrity and honesty,"[26] "strength of character, determination, and intelligence,"[27] and as "a wonderful and sincere person who displays a caring and nurturing nature at a level that is uncommon to see in others."[28]

"People think of Annabel first when they need someone to run their charity, help on a daily basis, or just need a friend."[29] "She is there when it truly counts."[30] When a friend was diagnosed with cancer recently, Ms. McClellan became "her primary caregiver," "driving her to and from surgery," "checking in on her several times a day," and "unconditionally makes time to be [her] advocate at follow up doctor appointments."[31] As a friend, she has consistently

---

[20] Bender Letter.
[21] Letter from Milly Hanley ("Hanley Letter"), Exhibit 16.
[22] Letter from Brewster Ely ("Ely Letter"), Exhibit 1; McClellan letter.
[23] Wyllie letter; Letter from Mary Ann Bendel, Exhibit 18.
[24] Letter from Linda Klouda ("Klouda Letter"), Exhibit 5.
[25] Klouda Letter; M. Heath Letter.
[26] Letter from Janny Rieder, Exhibit 17.
[27] Hirst Letter.
[28] Gustavson Letter.
[29] Downs Letter.
[30] Gustavson Letter.
[31] R. Heath Letter; Klouda Letter.

1    "offered and demonstrated introspection, encouragement, empathy, and honest friendship."[32]

2    All who know her remark on the "special bond" she has with her family in England

3    "despite the many miles that separate them."[33] Her sister Caroline attests that "she has always

4    played a protective role and has always been there for me with advice and support which was

5    especially important during our parent's divorce when I was 5."[34] For this reason, it is

6    especially heart-wrenching for Ms. McClellan that – during the pendency of this investigation

7

8    and until the time that her sister Miranda's case is concluded – she is prohibited from having

9    any contact with her. Given the close nature of their relationship previously and Ms.

10   McClellan's assumption of a maternal role in her sisters' lives, this is an extraordinary

11   punishment in and of itself.

12

13   Ms. McClellan's offense is clearly an aberrant episode in an otherwise productive,

14   loving, valuable life. She is dear to her family and friends and is a contributing member of her

15   community. She made bad choices leading to her prosecution, but, as is also consistent

16   throughout the attestations submitted to the Court, Ms. McClellan has expressed sincere and

17

18   profound remorse and regret for her conduct and has taken full responsibility for her actions -

19   even to those in her life who are not directly affected.

20   As Dr. Jinich attests, Ms. McClellan has taken real steps to take stock of what caused

21   her behavior and diligently is working to address the psychological trauma and stressors that

22

23   shaped her poor decision-making. Ms. McClellan stands before the Court both willing and well

24   on her way to making amends and repairing the damage she has caused. She asks that the

---

[32] Morse Letter.

[33] Kouda Letter.

[34] Yip Letter.

1   Court evaluate her offense the context of all the many other ways she is a good person, a

2   wonderful mother, supportive wife, unfailing friend, and valuable citizen.

3          d.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense,
4               Promote Respect for the Law, and Provide Just Punishment

5          In determining whether the low end of the guidelines range is warranted under these

6   circumstances, the Court should consider that Ms. McClellan has no criminal history, has led

7   honest and trouble-free life, and she will continue to do so going forward.  Obstruction of the

8   SEC's investigation or any act of lying under oath is a serious offense that, by its very nature,
9

10  demonstrates a lack of respect for the law.  Thus, it follows that the punishment should be

11  commensurate in promoting respect thereof.  Here, a sentence of 10 months imprisonment –

12  along with the significant collateral consequences of her incarceration to her family unit – is a

13  serious sentence.  It reflects appropriately the seriousness of Ms. McClellan's offense, while
14

15  promoting the respect for the law that her offense flouted, and provides just punishment,

16  considering the totality of the circumstances.

17         e.   The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct
                and Protect the Public from Further Crimes of the Defendant
18

19         Ms. McClellan's situation and the impact that her offense already has had on her life is a

20  perfect illustration to others who would attempt to lie to investigators or obstruct a government

21  investigation that attempting to avoid prosecution by lying is not worth the risk.  In addition to

22  the serious sentence of incarceration Ms. McClellan faces, she has agreed to pay to the SEC a
23

24  fine of $1 million, $250,000 of which already has been paid.  This is a severe penalty, an

25  enormous financial burden on their family, and an additional consequence for her conduct in this

26  matter.  At the end of the day, Ms. McClellan's family and children will pay many times that

27

28  DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM          - 15 -
    CASE NO.:  CR-11-0860 WHA

1  amount in terms of the damage to her husband's reputation, career, and earning potential going

2  forward. Despite his exoneration and the dismissal of the SEC matter against him, the blemish

3  on her husband's name and record will not be easily erased. In addition, the publicity that Ms.

4  McClellan's prosecution, conviction, and sentencing have drawn serve as powerful deterrents to

5
6  others in positions similar to Ms. McClellan. Finally, in terms of specific deterrence, prevention

7  of Ms. McClellan ever making the same mistake again is certain. As the Presentence Report

8  notes, the regret Ms. McClellan feels has been "unbearable," and despite the pain of this process,

9  McClellan has "accepted full responsibility for her conduct."[35] Under these circumstances,

10  where both specific and general deterrence already have been accomplished, a sentence on the

11  low end of the guideline range is sufficient.
12

13          f.    To Provide the Defendant with Needed Educational or Vocational Training,
                  Medical Care, or Other Correctional Treatment, in the Most Effective Manner.
14

15

16

17

18

19

20

21

22

23

24

25  _____
    [35] Presentence Report, ¶ 13, page 5.
26

27

28  DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM        - 16 -
    CASE NO.:  CR-11-0860 WHA

[REDACTED]

As the Court is aware, weekly psychotherapy is not available to inmates during their incarceration. Therefore, Ms. McClellan requests that the Court consider that her needed psychotherapy will be interrupted, her anxiety increased during her 10 month term of incarceration, and that it makes sense to minimize this interruption so as not to impede the progress she has made thus far.

g.   The Kinds of Sentences Available and the Applicable Sentencing Range

As described in the Presentence Report, USSG § 5C1.1 (d) provides that for a Zone C sentence, the minimum term of 10 months imprisonment may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment. Here, Ms. McClellan has agreed as a term of the agreement not to argue for a sentence of less than 10 months in prison.

Additionally, the plea agreement provides for a one to three years of supervised release. Ms. McClellan asks the Court to impose a term of one year of supervised release. Section 3583(c) guides the Court in determining the appropriate length of a term of supervise release and provides that the Court not focus on supervised release as punishment. *See* 18 U.S.C. § 3583(c) Rather, the Court is urged to focus on the extent to which the supervision affords adequate

1   deterrence, protects the public from further crimes of the defendant, and provides the defendant

2   with needed rehabilitation. *Id.* Here, to accomplish these objectives, it is unnecessary to require

3   Ms. McClellan – a 39-year old, educated mother of two, with strong ties to the community, and

4   who has demonstrated a real interest in addressing her behavior through clinical therapy – to

5   submit to a lengthy period of supervised release. One year is sufficient to satisfy the Court that

6   upon her release, Ms. McClellan fulfills her duties to the Court to lead a trouble-free life and to

7   address her personal issues. Beyond that, the cost to the Court of an additional term of

8   supervised release is unwarranted under these circumstances. Thus, Ms. McClellan respectfully

9   asks that the Court order a one-year term of supervised release following her incarceration.

10          h.   The Need to Avoid Unwarranted Sentence Disparities among Defendants with
               Similar Records Who Have Been Found Guilty of Similar Conduct

11          Ms. McClellan's offense was a foolish, selfish act for which she is suffering the

12   consequences – financially, legally, and personally. As the sentence Ms. McClellan seeks is

13   within the guidelines range for her offense level, the Court's imposition of a 10-month sentence

14   would not create any unwarranted sentencing disparity among defendants with similar records

15   who have been found guilty of similar conduct.

16          i.   The Need to Provide Restitution to Any Victims of the Offense

17          As the Government and the Probation Office agree, restitution is not an issue in this case

18   as there are no identifiable victims.

23   //

24   //

25   //

26   //

27   //

28   DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM        - 18 -
     CASE NO.: CR-11-0860 WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   RECOMMENDED SENTENCE

Ms. McClellan asks the Court to impose a sentence of 10 months imprisonment, one year supervised release, no fine (as recommended by the PSR and the Government, based on her payment of a $1 million fine in the SEC matter), no restitution (as recommended by the PSR and the Government), and a $100 special assessment.

Ms. McClellan agrees to the conditions of supervised release recommended in the PSR, with two exceptions. First, as Ms. McClellan's primary vocation since 1998 has been the care of her two young children, Ms. McClellan asks the Court not to require her to be employed full-time (or in search thereof) during the period of supervised release (Condition 5). Especially after having been separated from her children for the period of her incarceration, it would be an unnecessary additional impediment to Ms. McClellan's attempt to re-stabilize her children's life upon her return home. Second, Ms. McClellan asks the Court to exclude the condition requiring Ms. McClellan to submit to searches (Condition 6). As there is no allegation that Ms. McClellan's offense involved the possession of contraband or any indication that she will in the future possess such contraband, this condition is not rationally related to the facts of this case.

### IV.   VOLUNTARY SURRENDER

As the PSR has noted, Ms. McClellan is a good candidate for self-surrender and she requests that she be allowed to surrender herself voluntarily to the facility assigned her by the Bureau of Prisons on a date determined by this Court.

Upon clear and convincing evidence that Ms. McClellan is neither "likely to flee" nor "pose[s] a danger to the safety of any other person or the community," and if it is "clearly

DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM      - 19 -
CASE NO.:  CR-11-0860 WHA

shown that there are exceptional reasons" why Ms. McClellan should not be remanded to

custody immediately following the sentencing, this Court may allow Ms. McClellan to remain

released from custody and to surrender herself voluntarily to the Bureau of Prisons on the date

ordered by this Court. *See* 18 U.S.C. § 3144(c), 3143(a)(1).

Ms. McClellan has demonstrated that she is not a flight risk and that she lives up to her

obligations to this Court by dutifully attending each and every ordered court appearance, and

by fastidiously checking in with the Pretrial Services office. The government does not oppose

Ms. McClellan's request that she be released on her own personal recognizance under 18

U.S.C. § 3142(b) following imposition of sentence to allow her to self-surrender to the

institution designated by the Bureau of Prisons.

## V.    CONCLUSION

Ms. McClellan's punishment extends far beyond the term of imprisonment the Court will

impose. As a result of her own actions and poor decisions, she will subject her children to the

trauma of her absence, an experience similar to that which she and her siblings suffered. Her

husband's reputation, career, and future earning potential have been severely impacted. In

addition, she has endured the extremely painful restriction against contact with her sister.

Ms. McClellan diligently is working to address and confront painful issues with which

she has struggled. For 21 months, she has participated in weekly counseling and has made

progress in meeting specific treatment goals. Ms. McClellan has apologized to those who were

impacted by her wrongful conduct, and she is deeply committed to restoring her relationship

with her family and continuing her contributions to the community. She accepts full

responsibility and is truly sorry for her actions.

1   For the all the reasons set forth above, Ms. McClellan asks the court to follow the

2   recommendations of the Probation Office in imposing a sentence of 10 months imprisonment.

3   Based on the Court's inherent discretion and according to the §3553(a) factors, Ms. McClellan

4   respectfully submits that a sentence of 10 months incarceration, one year supervised release, and

5   a $100 special assessment, is fair and just sentence.

6

7   Dated:  October 31, 2011                      Respectfully submitted,

8

9                                                 Nanci L. Clarence
                                                  Nicole Howell Neubert
10                                                CLARENCE DYER & COHEN LLP
                                                  Counsel for Defendant Annabel McClellan
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM        - 21 -
     CASE NO.:  CR-11-0860 WHA

# CERTIFICATE OF SERVICE

I, Abbie Chin declare that:

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to the within action. My business address is 899 Ellis Street, San Francisco, California 94109.

On November 2, 2011, I served a copy, with all exhibits, of the following document(s):

**DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM**

To be served on the parties or attorneys in this action as follows:

_X_ (BY PERSONAL SERVICE) By personally delivering a copy of said documents to the address(es) below:

_____ (BY ELECTRONIC SERVICE) I caused an electronic delivery subject to 28 U.S.C ¶1746,  Local Rules or General Orders of this Court regarding Electronic Case Filing.  All pleadings and papers must be electronically served in accordance with those Rules or General Orders with email address(es) as noted below:

Said envelope was addressed as follows:

| | |
|---|---|
| Adam Reeves<br>U.S. Attorney's Office<br>450 Golden Gate<br>San Francisco, CA  94109<br>adam.reeves@usdoj.gov | Charlie Mabie<br>Northern District of California<br>United States Probation and Parole Officer<br>450 Golden Gate Avenue<br>18th Floor<br>San Francisco, CA 94102<br>charlie_mabie@canp.uscourts.gov |

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 2, 2011 at San Francisco, California.

Abbie Chin

DEFENDANT ANNABEL MCCLELLAN'S REDACTED SENTENCING MEMORANDUM          - 22 -
CASE NO.:  CR-11-0860 WHA