UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM ALSUP, JUDGE

```
------------------------------)
                              )
UNITED STATES OF AMERICA,      )
                              )
              Plaintiff,       )
                              )
     v.                        )     No. Cr. 10-0860 WHA
                              )
ANNABEL MCCLELLAN,             )
                              )
              Defendant.       )     San Francisco, California
                              )     Tuesday, November 8, 2011
------------------------------)       (17 pages)
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

| | |
|---|---|
| For Plaintiff: | MELINDA L. HAAG, Esq. |
| | United States Attorney |
| | 450 Golden Gate Avenue |
| | San Francisco, California  94102 |
| BY: | ADAM REEVES |
| | Assistant United States Attorney |
| For Defendant: | Clarence, Dyer & Cohen, LLP |
| | 899 Ellis Street |
| | San Francisco, California 94109 |
| BY: | NANCI L. CLARENCE |
| | NICOLE H. NEUBERT |
| Also Present: | CHARLIE MABIE |
| | U.S. Probation |

1   <u>Tuesday, November 8, 2011</u>

2                                                    (4:10 p.m.)

3              (In open court; defendant present)

4          DEPUTY CLERK:  Calling Case No. 10-860, United States

5   of America vs. Annabel McClellan.

6          Appearances, Counsel?

7          MR. REEVES:  Adam Reeves for the United States.  Good

8   afternoon, your Honor.

9          THE COURT:  Mr. Reeves.

10         MS. CLARENCE:  Good afternoon, your Honor.  Nanci

11  Clarence and Nicole Neubert on behalf of Miss McClellan, who's

12  present before the Court.

13         THE COURT:  Welcome back to you.

14         And, Miss McClellan, how are you?

15         THE DEFENDANT:  Very good, your Honor.  Thank you.

16         MR. MABIE:  And Charlie Mabie, U.S. Probation.

17         THE COURT:  Mr. Mabie.

18         We are here for sentencing.  Miss McClellan, I'm

19  required to ask you:  Did you read the presentence report?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Any unresolved objections?

22         THE DEFENDANT:  No, your Honor.

23         MS. CLARENCE:  No unresolved objections from the

24  defense, your Honor.

25         THE COURT:  How about from the government?

                    MR. REEVES:  Not from the government, your Honor.

                    THE COURT:  Okay.  So to summarize where we are, this
was an obstruction of justice violation, 18 USC 51505, arising
out of an insider trading situation.  Basically, lied to the
SEC.  Miss McClellan pled guilty to that.  And -- in an
11(c)(1)(C) deal.  I think your range is 10 to 16 months,
correct?

                    MS. CLARENCE:  Correct.

                    MR. REEVES:  That's correct.

                    THE COURT:  Assuming the Court goes along with it.
And the probation report says offense level 12, criminal
history Category 1, which is the guideline provision 10 to 16
months.  Everyone agree with that?

                    MR. REEVES:  The government does, your Honor.

                    MS. CLARENCE:  And the defense, your Honor.

                    THE COURT:  So the argument is over what the right
sentence should be.  I've read this material.  It has been
submitted.  So I want to give everybody everyone all the time
they would like to address whatever they'd like.  Now, I know
some of this was submitted under seal, but I cannot clear the
courtroom, and this is a public proceeding, so I want you to be
mindful that whatever you say is going to be on the public
record.  The -- and I think it should be on the public record,
because we are a public institution and the public has the
right to check in and see what we do here.

1    So there we are.  The defense gets to go first.

2  Ms. Clarence?

3    MS. CLARENCE:  Yes, your Honor.  The defense, under

4  the agreement, is required to argue no less than 10 months

5  prison, your Honor, and that is the appropriate sentence in

6  this case.  It's notable that under a "B" plea that a sentence

7  of five months in and five months in a halfway house or in home

8  confinement would be available.  And as a result of this "C"

9  plea, Ms. McClellan has agreed to give up that argument.  So we

10  submit that the 10-month sentence is the appropriate sentence

11  here in view of the nature of the case, your Honor, and in view

12  of the nature of her cooperation, which was of a deeply -- the

13  personal and intense subject area relating very much to her

14  family relationships, and because she has already been

15  significantly punished by the resolution in the parallel

16  proceeding here, your Honor.

17    Ms. McClellan is extremely remorseful.  She is not

18  someone who's ever going to appear before the Court in this

19  position again.  She's got the community support, familial

20  support that will engender her success upon her release, and we

21  submit that that is the appropriate sentence.

22    THE COURT:  Mr. Reeves?

23    MR. REEVES:  Thank you, your Honor.  Annabel McClellan

24  betrayed her husband for years in a duplicitous and destructive

25  manner.  She stole highly confidential material, nonpublic

information.  She tipped her sister and brother-in-law in order to illegally benefit her family, and she lied repeatedly about it under oath to the SEC.

This is not a one-time lapse of judgment.  The defendant undertook a carefully planned and executed criminal scheme.  It may have begun in a casual manner, but it was carried out using code words like, "Arnie's still busy" to indicate that a deal was still active.  And it utilized international markets that helped conceal the crime.  The criminal conduct was sophisticated enough to require a superb, internationally coordinated investigation by the SEC, the Financial Services Authority in London, and the FBI.  It was so sophisticated that it required that coordination to be detected.

By any measure, your Honor, the nature and circumstances of this offense are so serious that only a sentence of incarceration can act as a meaningful deterrent.

At the same time, the government acknowledges that the Court should weigh certain countervailing considerations in deciding a fair and just sentence for this defendant in this case.  We acknowledge that Annabel McClellan is the mother of two young children, and the duration of any prison sentence should balance their needs with the need for deterrence and punishment.

And second, the defendant, once charged, did decide to

1    cooperate with the government's investigation in a timely

2    manner.  Among other things, she voluntarily agreed to a

3    limited waiver of the marital privilege.  With that waiver in

4    place, Annabel McClellan and her counsel met with a total of

5    eight representatives of the government and answered every

6    question put to her over the course of a three-day interview.

7          Given the need to understand the relationship between

8    Ms. McClellan and her husband, some of the questions were

9    personal in nature, and difficult for the defendant to address.

10   To her credit, she did address those questions.  And in so

11   doing, by her cooperation, she allowed the government to

12   directly investigate the marital dimension of this case in a

13   manner that might otherwise have been foreclosed.  And for

14   that, she deserves credit.

15         For these reasons, the United States respectfully

16   submits that the just sentence in this case -- first, we submit

17   that we requested the Court please accept the plea agreement,

18   and we submit that the sentence in this case should be a

19   sentence of 14 months in prison, and a three-year term of

20   supervised release.  Because the defendant has already been

21   ordered to pay a $1 million penalty in the parallel civil

22   enforcement action by the SEC, the United States does not seek

23   any fine in the criminal case.

24         Thank you, your Honor.

25         THE COURT:  Ms. Clarence, is the defendant, Miss

1    McClellan, is she willing to give speeches as a condition of

2    her supervised release?

3              Speeches -- before you answer, the speeches would be

4    along the lines of explaining to a group of people who would be

5    in her peer group what she did, why it was a crime, what

6    happened to her, the whole ordeal that she's gone through.

7              MS. CLARENCE:  Your Honor, I would ask that the Court

8    consider not imposing that condition.  And I have a very

9    pronounced reason why, and that is that the public display of

10   this case has been quite extensive, and it has had a

11   deleterious effect on the two children born in this household,

12   ages eight and 13.  And continued airing of these matters, I

13   believe -- and I believe it's documented in Dr. Jinich's

14   report -- continues to have a very negative effect on

15   Ms. McClellan's family life, her family and home stability,

16   and, in particular, her son's.

17             That said, I do think that there are many other ways

18   that Ms. McClellan can and is willing to give back to the

19   community, and I ask the Court to explore with me other ways

20   that might be less harmful to her family and to her sons but

21   still also address the Court's concerns that she give back to

22   the community in a significant way.  As the Court knows, she

23   has a lengthy history of charitable works and volunteerism, and

24   that could be enhanced.  She would willingly and gladly accept

25   a larger burden in that regard.  I think we have to strike a

1   balance here and take into account those -- the impacts that

2   this might have on her son.

3           THE COURT:  Ms. McClellan, what would you like to say

4   before the Court makes a final decision?

5           THE DEFENDANT:  Your Honor, I'd just like to apologize

6   to the Court for my actions, which I know were just terribly

7   wrong.  And I'm -- you won't be seeing me here again.  And I

8   would just like to just apologize.  I am truly sorry.  And I'm

9   very sorry for the pain I inflicted on my family and my

10  friends.

11          THE COURT:  Anything more?

12          MS. CLARENCE:  Nothing further, your Honor.

13          MR. REEVES:  Nothing for the government, your Honor.

14          THE COURT:  When you began by saying that this is

15  troubling case, the defendant, Ms. McClellan, is a very good

16  person.  And I hate it, and we all hate to see a good person

17  like Ms. McClellan in this position.  I mean that.  I think I

18  speak for everyone that is in the courtroom today.  I've read

19  all the good things that you have done.  You have a wonderful

20  family, and -- so this is not a day that you want to remember

21  later on.  So, that point deserves to be said.

22          Now, on the other side of the balance, this deserves

23  to be said:  One of the most remarkable and valued institutions

24  in our nation is the integrity of our securities and capital

25  markets.  And that was a wild free-for-all until 1933.  And

slowly but surely Congress has passed statutes, created the

Securities and Exchange Commission, and for at least 40 years,

we have had a marketplace that protects elderly people with

their pensions, protects investors from overseas, protects

small investors, because they have come to rely upon the

integrity of the market. And when, Ms. McClellan, someone like

you, with access to inside information, betrays that, and

either themselves trade on it or, in this case, lets their

family members trade on it, over a sustained period of time, it

undermines that integrity. We all know that a lot more people

get away with it than get caught.

      Now, in this case, the -- that's not what you're

charged with. You're charged with lying about it to the SEC.

So we have to keep in mind what the actual crime was. But it

goes hand in hand with the need for the -- one of the greatest

institutions in our history is the Securities and Exchange

Commission, which has done a good job of trying to keep these

markets as clean as possible. And one way they do that is by

asking questions, and they expect the public and the

respondents to tell the truth. And you lied. You just lied.

      So, there is a very good reason to say, No. Even a

good person -- every single person we see in this courthouse

who is facing a charge like this, it's the only crime they've

ever committed. And it's the only crime they ever will commit.

Because they're basically good people and they just got caught

1    with a circumstance where, like in your case, you kind of got

2    into it, and it was too hard to get out of it once you got into

3    it.

4           So there is a -- what I'm leading up to is, there is a

5    very strong need in these cases for deterrence.  There's no

6    doubt you'll never be seen here again.  That's not the point.

7    It's to deter others who are similarly situated so that they

8    will know when the day comes that the SEC calls on them, they

9    will say, I better tell the truth, because otherwise I'll wind

10   up like Ms. McClellan, in jail.

11          So, deterrence is of extreme importance in these

12   cases.

13          Now, if this had not been a 11(c)(1)(C), the minimum I

14   would have considered would be 18 months in prison.

15   Ms. Clarence knows that from prior cases, no matter how good

16   the person is, because the integrity of the system requires

17   sentences that, when discounted against the probabilities of

18   getting caught, will deter this kind of conduct.

19          In this case, though, you have an 11(c)(1)(C), and

20   there's some considerations that cut in your favor beyond what

21   I've already said.  One is, you have cooperated.  That's a very

22   important step.  That's good for you.  Next, you've also agreed

23   to pay a $1 million fine, one quarter of which I understand

24   you've already paid.

25          Is that true Mr. Reeves?

         MR. REEVES:  I believe so, yes, your Honor.

         MS. CLARENCE:  It is so, your Honor.

         THE COURT:  So, that's important.  I think in this
case there were some extenuating circumstances as well that
Ms. Clarence has done an excellent job of explaining.  Normally
I would have said it was not too convincing except for the fact
that I think your lawyer did a very good job laying out the
family situation and the circumstances that led up to this.  It
Doesn't -- it will not excuse much of the conduct, but it helps
me understand it, and I want you to know I do see the situation
you found yourself in.

         Then, of course, there's the fact that you have two
young children.

         So, this is a case where I think there are some
considerations that mitigate against a -- I think there's some
mitigating factors against the need for deterrence, and those
have got to be balanced, just as the government suggests.  It's
not a clear-cut formula.

         So I think in this case, Ms. McClellan, the right
answer is 11 months.  Eleven months.  I am going to require you
to -- I'm going to reduce the number, but you've got to give at
least one talk to at least 30 people during your supervised
release that will explain what you did wrong, what the ordeal
was that you went through, what life was like in prison, and my
goal there is that 30 people who hear you will -- it will help

them.  And it's also another goal, to -- your own
rehabilitation.

All right.  So I'm going to now read the sentence.
And of course I'll let you voluntarily surrender on any
reasonable date you want.

It is the judgment of the Court that Annabel McClellan
is hereby committed to the custody of the Bureau of Prisons for
11 months.  Upon release, she will be placed on supervised
release for three years.  Within 72 hours of release from the
custody of the Bureau of Prisons, you must report to the, in
person, to the probation office of the district to which you
are released.  While on supervised release, no more crimes.
I'm sure that won't happen.  Also, you are to comply with the
standard conditions adopted by the Court, refrain from any
unlawful use of a controlled substance, and submit to a drug
test within 15 days of release.

MS. CLARENCE:  Excuse me, your Honor.  Might I be
heard on that condition?

THE COURT:  Which one?

MS. CLARENCE:  The drug testing.

THE COURT:  Of course, yes.  What would you like to
say?

MS. CLARENCE:  Thank you.  We would ask the Court to
excuse Ms. McClellan of that special condition.

THE COURT:  Let me ask:  Why is that in here?  Is

1   there any history of drug abuse?

2          MR. MABIE:  In the past, your Honor, I believe --

3          THE COURT:  There has been?

4          MS. CLARENCE:  No, absolutely not.

5          MR. MABIE:  I'm sorry.

6          MS. CLARENCE:  And the presentence report doesn't even

7   call for that condition.

8          THE COURT:  Well, this is what Mr. Mabie put in here.

9   But Mr. Mabie, is there any history of any drug abuse?  Or

10  alcohol abuse?

11         MR. MABIE:  There was -- she talked about drug use

12  back when she was in college, your Honor.

13         THE COURT:  Drug use or abuse?

14         MR. MABIE:  Use.

15         THE COURT:  That was what, 20 years ago?

16         MS. CLARENCE:  Over 20 years ago, your Honor.  The PSR

17  itself --

18         THE COURT:  Let me just ask Ms. McClellan:

19  Ms. McClellan, have you used any illegal drugs in the last 10

20  years?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  So we'll take that out.  We can always put

23  it back in if it becomes a problem, but I don't think it will

24  be.  So, no drug test for you.

25         MS. CLARENCE:  Similarly, your Honor -- I don't mean

1  to interrupt, but there's a litany of conditions I know --

2          THE COURT:  Tell me what the ones are.

3          MS. CLARENCE:  The standard regarding search and

4  seizure for contraband I think is inapplicable and unindicated

5  by this record as well.

6          THE COURT:  Well, maybe contraband, but we get to

7  evidence of a violation of condition of release -- I've got to

8  leave that in there.  So -- I'll take out contraband.  Is there

9  any other one don't you like?

10          MS. CLARENCE:  The drug testing and -- upon release.

11          THE COURT:  Got rid of that.

12          MS. CLARENCE:  Got rid of that one.  And then the

13  final one was the full-time employment, which I'd like to

14  address to the Court.  It relates to my earlier remarks.

15  Ms. McClellan has a very active role as the homemaker and

16  mother of this household, and --

17          THE COURT:  I'll take that one out.  Put that one in

18  there for people who -- a need for deterrent to a crime because

19  they don't have a job, but in her case that's not an issue.  So

20  we'll take that one out.  What else?

21          MS. CLARENCE:  That's it.

22          THE COURT:  Okay.  So, while on supervised release, no

23  more crimes.  Comply with standard conditions adopted by the

24  Court.  And pay the fine and special assessment -- well, there

25  is no fine.

1            MS. CLARENCE:  No fine.

2            THE COURT:  No fine.  Pay the special assessment

3    imposed by the judgment.

4            Provide U.S. Probation with access to financial info,

5    including tax returns, and authorize U.S. probation to conduct

6    credit checks and obtain copies of income tax returns.

7            No fiduciary position without prior okay of probation.

8            Participate in a mental health treatment program and

9    pay your fair share.

10           Submit your person, residence, office, vehicle, or any

11   property under your control to a search to be conducted by

12   probation at a reasonable time and manner based on reasonable

13   suspicion of evidence of a violation of the condition of

14   release.  Failure to submit to such a search may be grounds for

15   revocation.  Please warn residents that the premises may be

16   subject to searches.

17           No firearms, ammunition, destructive devices or other

18   dangerous weapons.  And never be present in a vehicle where any

19   such thing is present.

20           Check voicemail and answering machine every day and

21   follow instructions left by Probation, if any.

22           Cooperate in the collection of DNA as directed by

23   Probation.

24           Pay to the USA a special assessment of $100, due now.

25           We'll skip the part about working it off because I

1  know you can pay it.

2          The Court finds the defendant will pay the fine to the

3  SEC, so that we won't have a fine in this case.

4          Any reason why the form of judgment should not be

5  entered as I've just stated?

6          MR. REEVES:  No, your Honor.

7          THE COURT:  Okay.  Then that will be the form of

8  judgment.

9          So, Ms. McClellan, I am sorry that this has happened

10  and -- to you, and I know you are too, but there's some good

11  things that may come of this.  And this is not a great time,

12  but it will be behind you in short order and you will be on

13  with the rest of your life.

14          So, I'd like to calendar this for a meeting.  Let's

15  say -- well, first of all, when do you want to report?

16          MS. CLARENCE:  We'd ask your Honor two things:  First,

17  that we would surrender on January 2nd.

18          THE COURT:  Fine.

19          MS. CLARENCE:  And second, your Honor, that the Court

20  consider a recommendation for Ms. McClellan to serve her

21  sentence at the FCI Pleasanton facility where she can be in

22  contact with her children.

23          THE COURT:  Yes.  Absolutely will do that.  Done.  So

24  if we start on January 2nd, that means you would report here to

25  the building, 20th floor, go to the U.S. Marshals and they'll

process you in, and if you were to get a designation of a facility before that, you would just report to the facility. So -- I'm not quite sure they'll be ready by January 2nd. But January 2nd at noontime will be the deadline here. So remember that date.

And then -- so that means we want to put this case on for -- let's just say January of 2013. That will be well after you get out. Let's see, January 15th, 2013. Come back here to see how we're doing and how the Court can help you, and the supervised release, and -- probably, we'll just see.

How's that sound? Tana, be sure to calendar that date.

DEPUTY CLERK: Yes, your Honor.

THE COURT: Does that date work?

MS. CLARENCE: Yes, your Honor. Thank you.

MR. REEVES: Yes, your Honor. Thank you.

THE COURT: Anything else today?

MS. CLARENCE: No, your Honor.

MR. REEVES: Nothing from the government. Thank you, your Honor.

THE COURT: Thank you.

(Adjourned)

oOo

```
 1
 2
 3
 4                    CERTIFICATE OF REPORTER
 5
             I, Connie Kuhl, Official Reporter for the United
 6   States Court, Northern District of California, hereby certify
     that the foregoing proceedings were reported by me, a certified
 7   shorthand reporter, and were thereafter transcribed under my
     direction into written form.
 8
                        _Connie Kuhl_
 9   _____
10                   Connie Kuhl, RMR, CRR
                   Thursday, December 29, 2011
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```